BUTLER vs. KENNER & AL.

BUTLER
vs.
KENNER & AL.

An executor,
who sues on a
cause of action
that did not ex-
ist in his tes-
tator, needs not
sue as execu-
tor.
The bailee
cannot oppose
to the bailor
the right of a
third person to
the thing bail-
ed.

APPEAL from the court of the first district.

MARTIN, J. delivered the opinion of the court. The petition states, that R. Butler di-ed, possessed of considerable real and person-al property, in the states of Louisiana and Mis-sissippi, having appointed the plaintiff and A. L Duncan, his executors—and his will was proven and letters testamentary accordingly issued, from the court of probates in New Or-leans—but the period within which the exec-utors were authorised to act, has long since expired—that the plaintiff proved the will and obtained letters testamentary, in the state of Mississippi, having previously given bond ac-cording to law : but A. L. Duncan did not prove the will neither did he act as an executor under it in the state of Mississippi—that, he paid to the devisees of his testator and the heirs of Margaret Butler, the testator's wife, to whom one half of the personal property of his testator in said state was bequeathed, their res-pective shares of said estate, with the excep-tion of certain bank shares and a quantity of cotton, and has lately transferred to the heirs of Mrs. Farrar 296 shares in the bank of

Mississippi, and disposed of the whole estate according to law, except 91 bales of cotton, and a quantity of it in the seed, which has produced 128 bales, and he afterwards obtained 296 bales, from the crop off the deceased's plantation, in said state : the whole of which cotton, viz. 424 bales, he consigned, for sale, to the defendants, commission merchants in New Orleans, who sold it for $27,611 54, as, by their account of sale, appears.

The petition contains another charge of the same sum, for money received for the plaintiff's use.

It is next averred, that by the defendants' neglect and refusal to pay, the plaintiff is disabled from settling his accounts, with the orphans' court in the state of Mississippi, to pay the remaining debts of the estate, and realising the commission to which he is entitled, whereby he suffers damage to the amount of 10,000 dollars.

There is next a charge for the like sum of $27.611 54 cts. stated as due from the defendants to the plaintiff, on the net proceeds of a quantity of cotton, by him shipped to them, and by them, sold for his account.

The defendants, after a plea in abatement,

East'nDistrict.
*March*, 1824.

BUTLER
*vs.*
KENNER & AL.

which will be considered, deny that they are indebted to the plaintiff in any other manner than appears by an account, annexed to their answer, and which they aver, contains a true account of all their transactions relative to the estate of the plaintiff's testator, and that they were duly authorised to charge all the items therein charged. They denied that the plaintiff, as executor, made the payments and transfers alleged to have been made, either to the legatees of his testator, or the heirs of Mrs. Butler ; but that these payments and transfers were made in pursuance of an agreement referred to. in their answer to the plaintiffs interrogatories—that the proceeds of the 296 bales of coton were disposed of according to the order of the plaintiff's co-executor, and according to the above mentioned agreement.

They answered to the plaintiff's interrogatories that, 1st. in 1821 they opened an account with the plaintiff, as executor of R. Butler, and continued to correspond with him, up to the time they rendered him the account current, a copy of which is annexed to the petition, viz. Nov. 9, 1822, when they received a letter from him, complaining of a charge of $17,326 76 cts. dated April 9, 1822, mena-

cing them with a suit, unless it was abandon-doned—that they replied that the estate was charged with that sum, by the direction of his co-executor, and of Harriet Hook, one of the legatees, who was entitled to that sum and more, by the agreement, referred to in the answer, and a consequent partition and settlement, made by the co-heirs ; sanctioned and approved by the plaintiff, and carried into effect by commissioners, appointed by the heirs, the plaintiff being present and assenting to the partition and settlement, so that the defendants could not withhold from said Harriet, the sum there assigned her.

2. The defendants never received any directions from the plaintiff, as to the manner of keeping said account.

3. They received instructions from him, to keep a separate account of the disbursements of the Woodstock plantation, as appears by his letter, annexed to the answer ; and they have no recollection of having ever received any other instructions, relative to the manner of keeping accounts—they never considered the instructions, as placing the funds derived from the Woodstock estate out of the control of A. L. Duncan, his co-executor, and therefore

East'n District. felt perfectly safe, in paying over to Harriet
*March*, 1824. Hook, the money in their hands, in the man-
BUTLER ner set forth in the first of these answers.
*vs.*
KENNER & AL.    4. They kept an account, with the plaintiff,
confined to these transactions with him, as ex-
ecutor of R Butler ; but no joint account with
him and A L. Duncan, his co-executor. They
had no other instruction, as to the mode of
keeping this account, than is contained in the
third of these answers.

The suit was submitted to the court on the
following agreed case.

R. Butler died Oct. 5, 1320, leaving the
plaintiff and A. L. Duncan, his executors.

2. On the 9th of Dec. following, Duncan
obtained letters testamentary in New Orleans,
for the state of Louisiana, only; having never
qualified as executor, in the state of Mississip-
pi.

3. The plaintiff obtained letters testamentary,
in Louisiana on the 13th of May, 1821.

4. He obtained like letters in the state of
Mississippi, on the 25th of June, 1821, and ex-
ecuted the bond required, with sureties for
150,00 dollars, for the faithful discharge of his
duties as executor.

5. He afterwards proceeded, on his own in-

dividual responsibility, as executor, in the state of Mississippi, to the inven tory and appraisment and the discharge of his other duties.

6. He made the payments and distribution of the property, evidenced by the receipts annexed, and referred to in his petition.  These receipts were duly executed by the persons by whom they purport to be signed, and it is admitted that those who appear to have signed them as agents, were so authorised.

7. The cotton, mentioned in the petition, and for which payment is claimed, grew on the plaintiff's testator's plantation, in the state of Mississippi ; it came to the plaintiff's hands and he shipped and consigned it to the defendants.

8. They received and sold it for 27,611 dollars and 54 cents.

9. B. Farrar, B. T. Young and Eliza Young, are the heirs of Mrs. Butler, who died in October, 1820.

10. R. Butler devised to his wife one half of his personal estate, in the state of Mississippi.

11. The plaintiff gave the instructions, in his letter to the defendants, referred to in this answer to his interrogatory.  He gave them

East'n District.
*March*, 1824.

BUTLER
vs.
KRNNER & AL.

no authority to pay to Harriet Hook, or any other legatee, and wrote the letter of Nov. 15, 1822, protesting against the defendants' conduct in regard to the credit given to Harriet Hook, and the consequent debit on his account current.

12. There are several debts of the testator, unpaid in the state of Mississippi, amounting to 2000 dollars ; and several claims disallowed by the plaintiff ; but for which suit may be brought, amounting to 3000 dollars.

13. The plaintiff has a considerable sum due him for commission, as executor of the estate in the state of Mississippi, and there are not sufficient funds in his hands to discharge the claims and said commission.

14. He was enjoined by the court of chancery of the state of Mississippi from dividing or distributing the estate in his hands, and this injunction was in force at the date of the item complained of.

15. The agreement referred to in the answer, was communicated to the plaintiff before the date of Harriet Hook's receipt, and was acted upon by him, in the distribution of the estate,

16. The plaintiff in May last received let-

ter from judge Dick, stating the outlines of a division of the estate.

BUTLER
vs.
KENNER & AL.

17. And Duncan shewed him a copy of the agreement mentioned in that letter.

18. All the estate which came to the hands, or is under the control of the executors, except the balance, arising on the sale of cotton in the defendants' hands, was, previous to the institution of the present suit, distributed and divided among the heirs and legatees, according to the principles of the agreement referred to. All these distributees are wealthy, and fully able to pay any debt or legacy, remaining unsatisfied.

There was judgment for the defendants, and the plaintiff appealed.

By the agreement relied on by the defendants, a partition of the estate of R. Butler, and M. Butler, is made, and to the payment of a balance due to the heirs of M. Butler, *the proceeds of cotton, and other moneys of the estate,* are affected.

Judge Dick, in his letter to the plaintiff, of May 11, 1822, informs him that a division and transfer of the several portions of the estate has been effected, except the balances in the defendants' hands, and the money due by

East'n District.
March, 1824.

BUTLER
vs.
KENMER & AL.

M'Cutcheon, and that he has heard that Mrs. Hook has purchased for 50,000 dollars, M'Cutcheon's part of the Woodstock estate.

The plaintiff argues that the defendants contracted with, and are responsible to him alone ; that the agreement of the parties, in regard to the division of the estate, cannot affect or modify his right on the defendants. That if this agreement is to have any effect, it does not suppot the alleged payment to Mrs. Hook, a devisee of R. Butler, as it appropriates the funds in their hands to the payment of the heirs of his widow. The plaintiff is responsible to the devisees and legatees of his testator, for the proceeds of the cotton, and has therefore a right to claim these proceeds from the defendants. Duncan was without authority to instruct ; nothing authorises his interference. The defendants having undertaken to act as the plaintiff's agent, and received the cotton from him, cannot dispute his authority, nor withhold an account of the payment of the proceeds from him.

The defendants' first ground of defence, is a technical one, that the plaintiff sues an executor, in the state of Mississippi ; and, as such, ought previously have obtained letters testa-

mentary in this state. That he cannot join in the same petition a claim, in right of his testator, with one in his own right.

The plaintiff's cause of action was not one which ever existed in his testator, the suit cannot therefore be said to be brought in the right of the testator. The plaintiff contracted with the defendants, in respect to a quantity of cotton, which is alleged to be a part of the estate; the plaintiff might have avoided mentioning this circumstance; for his possession gave him such a qualified property in the cotton, as warranted his suing for any injury done to that possession, or the breach of any contract relating thereto. *Hunter vs. Postlewhaite,* 10 *Martin,* 456.

It is next insisted that the plaintiff, by his own testimony, being an agent only for the devisees and legatees of his testator, must be bound by, and cannot alter any disposition of the property, which these, his principals, have made. An executor is not the agent of the devisees or legatees. To what use would his interposition be, if the devisees or legatees could at once command their respective devises or legacies, maugre the executor? It is from his hands they ought to be received, the things so

devise, and bequeathed are not to be arrested in the hands of his agents, and disposed of eo invito. The counsel has shown that the bailee cannot withhold the thing bailed, although it be not the property of the bailor. *Pothier, Mandat, n. 62.* Surely, the rights of the alleged owner, a third party, cannot be examined, because they cannot be affected by a suit in which he neither appears, nor is cited.

The defendants contend farther, that, admitting they were once accountable to the plaintiff, they are no longer so, because :

1. The property has been divided and apportioned by the heirs, devisees and legatess, to which Duncan expressly, and the plaintiff implicitly, assented.

2. The money paid to Harriet Hook was directed to be paid her by Duncan, who *ad hoc* was still an executor.

3. By a subsequent amicable agreement, the property was, with the express assent of the plaintiff, divided among the devisees and legatees, whereby the legal title vested in these devisees, and the defendants became thereby bound, on notice, to dispose of the funds in their hands accordingly.

It is admitted that Duncan's year of executorship had expired, and that his power resulting from the letters testamentary granted him by the court of probates of the parish of Orleans, (without which he could exercise no power under the will,) in Louisiana, had expired : and it is admitted that in the state of Mississippi, executors must , before acting, give surety and procure letters, which Duncan never did. The defendants cannot, in our opinion, derive any help from Duncan's act.

The plaintiff appears to have been satisfied with the mode of dividing the property, which the parties interested had agreed upon, and acted in pursuance thereto. But his lien or right of holding any part of the estate, of which he did not deprive himself, does not appear to have been thereby affected. The proceeds of the cotton were always in his hands, although in the possession and custody of his agents, an unappropriated *residuum*, after the heirs of M. Butler were paid without receiving any part of it.

It is further held that the cotton was not a part of the testator's estate, but was the individual property of his devisees, or the heirs of his wife.

This is re-producing an objection which has already been disposed of, when we concluded that the bailee could not oppose to the bailor, the right of another to the thing bailed.

The case agreed shows that the cotton, the value of which is claimed, came to the plaintiff's hands, as executor of R. Butler, in his administration of his testator's estate, that he shipped it to the defendants, with orders to sell it for him.

Whether the cotton made really a part of the estate or not, appears to us unnecessary to determine. If it was, the plaintiff, by taking it, and causing it to be sold, made it assets in his hands, and is accountable for the proceeds. The creditors or legatees of his testator, must establish their claims, upon any part of their proceeds, contradictorily with him, and cannot stop these proceeds in the hands of his agents: as the co-executor is not chargeable with the assets that came to his hands, and cannot give any directions as to the disposition of the proceeds.

If the cotton be no part of the estate, then neither Duncan as co-executor, nor the devisees and legatees of R. Butler, nor the heirs of M. Butler, can be considered as having agreed

to any disposition of it, for the division of the plaintiff's testator's estate was all they had in view.

We do not discover any thing in the case authorising the conclusion that the plaintiff consented to the payment, which he now contests, and the court erred in allowing it.

It is therefore ordered, adjudged, and decreed, that the judgment of the district court be annulled, avoided, and reversed, and that the plaintiff recover from the defendants the sum of twenty-seven thousand six hundred and eleven dollars and fifty-four cents, with interest from the inception of the suit till paid, with costs in both courts.

*Hennen* for the plaintiff, *Grymes* for the defendants.